MISSOURI, K. & T. RY. CO. OF TEXAS v. DICE. (No. 7988.)

(Court of Civil Appeals of Texas. Ft. Worth. May 30, 1914.)

1. CARRIERS (§ 357*)—CARRIAGE OF PASSENGERS—EJECTION OF PASSENGER—PERSON ON WRONG TRAIN.

Where a passenger's ticket called for a station which was not a regular stopping place for the train upon which he was riding, the conductor, using no more force than necessary, had the right to eject him at the last stopping place before reaching the point called for, if he did not offer to pay fare to the next regular stopping place.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1419, 1433; Dec. Dig. § 357.*]

2. CARRIERS (§ 381*)—CARRIAGE OF PASSENGERS—ACTION FOR WRONGFUL EJECTION—SUFFICIENCY OF EVIDENCE.

In an action for the wrongful ejection of a passenger at the last regular scheduled stop preceding that for which the ticket called, defended on the ground that the point called for by ticket was not a regular stop, evidence held to show that the conductor had authority in his discretion to accept the ticket to the point called for therein and then cash fare to the next stopping place beyond, notwithstanding the rules declared the ticket good only to the last stopping place before reaching such point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1473–1476, 1479–1482; Dec. Dig. § 381.*]

3. CARRIERS (§ 384*)—CARRIAGE OF PASSENGERS — ACTION FOR WRONGFUL EJECTION — INSTRUCTIONS.

In an action against a carrier for wrongful ejection of a passenger, a requested charge that defendant's servants had a right to call a peace officer to eject the passenger at the last regular stop preceding the point called for by ticket, and defendant would not be liable if such officer used no unnecessary force, was properly refused, because ignoring plaintiff's right to recover if he offered to pay his fare to the next regular scheduled stop.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1497–1500; Dec. Dig. § 384.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**4. TRIAL (§ 252*) — INSTRUCTIONS — APPLICATION TO EVIDENCE.**

In an action for wrongful ejection of a passenger, an instruction to find for plaintiff if defendant's servants procured a peace officer to arrest him, he having violated no criminal law, and defining "arrest" as the use of such restraint as to control his freedom of movement or action, was misleading, since, under such instruction, the use of any force would be an arrest rendering defendant liable, while the evidence did not show that more force than necessary was used.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

**5. CARRIERS (§ 381*)—ACTION FOR WRONGFUL EJECTION—SUFFICIENCY OF EVIDENCE.**

In an action for wrongful ejection of a passenger, evidence *held* not sufficient to raise the issue of the use of unnecessary force.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1473–1476, 1479–1482; Dec. Dig. § 381.*]

Appeal from District Court, Clay County; P. A. Martin, Judge.

Action by R. J. Dice against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Garnett & Garnett, of Gainesville, for appellant. A. H. Carrigan, of Wichita Falls, for appellee.

CONNER, C. J. Appellee instituted this suit in the district court of Clay county to recover actual damages in the sum of $1,000 and exemplary damages in the further sum of $5,000, for an alleged wrongful ejection from one of appellant's trains at Temple, on or about the 31st day of December, 1911. The trial resulted in a verdict and judgment in appellee's favor for $250, from which judgment this appeal has been prosecuted.

Appellee's testimony, in substance, was that he purchased a ticket at Wichita Falls, Tex., on the line of the Ft. Worth & Denver City Railway for Holland, Tex., a point on appellant's line of railway south of Ft. Worth; that when he arrived at Ft. Worth he was directed to enter the train upon which he did take passage and was informed that it was the proper train bound for Holland; that some time later, and before his arrival at Waco, he was informed by the auditor and conductor of appellant's train that it was not scheduled to stop at Holland and that he would be required, under the rules of the company, to alight at the last regular stop of the train before passing Holland, which was Temple. It further appears that appellee insisted upon continuing his journey to Holland, but that when the train in question arrived at Temple it was met by a peace officer, who, appellee testifies, entered the train at the instance of the trainmen and arrested him and took him therefrom and prevented his returning thereto. Appellee testified in this connection that finally, and before his ejection from the train, he agreed to pay and tendered to the conductor or auditor the regular fare from Holland, appellant's destination, to Bartlett, the next station beyond. This, however, was explicitly denied by both the conductor and auditor.

[1] Among other things, the court charged the jury that:

"Under·the reasonable rules and regulations of the railway company, its agents and servants in charge of said train had the legal right to eject the plaintiff from said train at Temple, Tex., provided that they used no more force than was reasonably necessary to accomplish that purpose, and provided further that he did not offer to pay his fare from Holland to Bartlett."

The converse of the proposition was also charged; that is, the jury were instructed that, if the plaintiff did not offer to pay his fare from Holland to Bartlett, then the defendant's agents had the legal right to eject him at Temple, and that if this had been done without unnecessary force they would find for the defendant. We think under the circumstances the charges were correct. See Railway v. Hassell, 62 Tex. 258, 50 Am. Rep. 525; Railway v. Townsend, 45 Tex. Civ. App. 616, 101 S. W. 455. Indeed, there is no objection to these charges on appellant's part, save that it is insisted under a number of assignments of error that it was immaterial whether or not appellee offered to pay his fare from Holland to Bartlett; the contention being that under the rules and regulations of the company, which were shown upon the trial, they had no authority to take appellee beyond Temple unless appellee should pay his fare from Temple to Bartlett. Appellant therefore assigns error to the limiting words in the charge above quoted, viz., "and provided further that he did not offer to pay fare from Holland to Bartlett."

[2] The formal rules and regulations offered are as insisted upon by appellant, and the criticism of the charge would be well taken, perhaps, save for the further testimony on the part of the conductor and auditor. The conductor, among other things, testified that the rule was not to stop at Holland, or any other station, unless it was marked as a stop for that train, and that he did not have any authority to accept appellee's ticket any further south than Temple.

"But if he had tendered the ticket to Holland and then 20 cents cash fare from Holland to Bartlett (as appellee testified he did tender), we would have accepted his ticket to Holland and the cash fare on to Bartlett and have violated the rules of the company to that extent. * * *"

The auditor testified, among other things:

"If plaintiff had been going beyond Temple on this train, he should have paid his fare out of Temple on to Bartlett; but, as a matter of trying to help him, we offered to take his fare from Holland to Bartlett. We should have collected fare from the last regular stop of this train to the next regular stop. The rules of the company did not authorize us to collect his fare from Holland to Bartlett; but, when we are employed by the company, they tell us to use our discretion in·cases of that kind. The

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

plaintiff did not offer me his fare from Holland to Bartlett; if he had done so, I would have deviated from the rules of the company and carried him to Bartlett to save any trouble."

It may be said to thus appear, if the testimony of the conductor and auditor is to be accepted, that the material issue was whether or not appellee tendered his fare from Holland to Bartlett, and that his failure to do so was the real reason under the rules for his ejection at Temple. The testimony quoted tends to show that appellant's agents were clothed with the discretion to accept appellee's fare as tendered, and thus permit him to get off at Bartlett as he desired to do. Other evidence indicated that this was the more convenient course for appellee to take, and he, being lawfully on the train and having offered to pay the fare, if he did so, would be entitled to continue the journey as a passenger to Bartlett; the rules under such circumstances not being a legal obstacle. All assignments therefore involving this question are overruled.

[3] Appellant assigns error to the action of the court in refusing the following special charge:

"Gentlemen of the jury, I charge you that, in ejecting plaintiff at Temple, defendant's agents and servants in charge of said train had the right to call to their aid any assistance which was reasonably necessary for that purpose, and the mere fact that the conductor, or other authorized servants, called to their aid the peace officer, Smith, and used his services in having plaintiff to leave said train, would not of itself render the defendant liable in damages to plaintiff, unless said officer used greater force than was necessary to eject plaintiff. Now, if you find from the evidence that said officer used no more force than was necessary to eject plaintiff, then you will find for the defendant."

We approve the charge in the main, but think it was properly rejected for the reason that it ignores appellee's right to recover in event he offered to pay his fare from Holland to Bartlett.

[4] The following clauses of the court's charge are also objected to:

"You are instructed that the defendant's agents and servants in charge of the train had no right to procure the arrest of plaintiff, he having violated no criminal law, and if you believe from the evidence that the officer Smith arrested him, and that said arrest was made by the direction of the defendant's agent or servants, then you will find for the plaintiff."

"An 'arrest' by an officer is the act of taking a person into the personal custody of such officer, placing him under such restraint as to prevent his freedom of action. An arrest may be accomplished either by words or acts, or both words and acts. It is an arrest if the officer, as such, places a person under such restraint as to control his movements and actions."

[5] We are of the opinion that the charges quoted were misleading and erroneous under the circumstances of this case. The conductor, among other things, testified, in substance, that appellee's manner when informed that he must leave the train was a little aggressive; that appellee stated, among other things, "that this train might not be in the hab-

it of stopping at Holland, but that that was one night it was going to stop here"; and that from the circumstances he thought it best to secure the assistance of an officer in event of trouble in an effort to eject appellee; and that he had therefore wired the agent at Temple to have an officer at the train. The auditor testified, among other things, to the effect that when the train arrived at Temple he got off at the platform with the brakeman, and that the officer came up and asked where was the gentleman who refused to get off of the train, and the brakeman pointed appellee out to him. He further testified:

"I was standing inside the door, and the officer went in and asked him if he was the gentleman that refused to get off at Temple, and Dice (appellee) said he was going to Holland. The officer told him this train did not stop at Holland, and he would have to get off at Temple. The officer asked Dice if that was his hat and grip there, and he replied that it was, and the officer said, 'Well, get it and let's get off of the train.' So Dice picked up his hat, coat, and grip and walked off the train without any force or anything threatened to be used on him. When he got off on the ground, Dice insisted on being arrested and having a charge preferred against him, and the officer told him, 'No,' all he wanted to do was to get him off the train, and was not going to arrest him, but said to him, 'If you don't quit making so much noise, I will arrest you for disturbing the peace.' I got back on the train then, and Mr. Dice attempted to get back on the train. When he left the train at Temple, he was not touched in any way, shape, form, or manner; nobody laid their hands on him at all."

The brakeman testified, among other things, substantially that:

"When we got to Temple, I was discharging the passengers that got off there, and the officer came up to me, and says, 'Where is that desperate character?' I says, 'I have no desperate character that I know of;' and he says, 'Well, that man that won't get off the train here.' I said, 'He is inside, and, just as soon as I get these passengers off, I will take you in there.' The passengers got off, and I goes in the car, and I says to Mr. Dice, 'This is Temple, and I am going to ask you again to get off the car or pay fare from Holland to Bartlett;' and he says, 'I refuse to get off this train until I reach my destination—Holland.' I says, 'Officer, this is the man.' The officer says, 'Get your hat and grip and coat and come with me.' That is all the officer said to him, and Mr. Dice says, 'All right, I am arrested,' or something like that, and he walked off the train, and the officer got off the train, stuck his hands in his pockets, and started off, and Mr. Dice wanted him to arrest him, and the officer said: 'No, I won't arrest you. I have got no authority to arrest you. All I have done is to take you off that train, and you are off the train now.' There were women, babies, and children riding in the car right in front of Mr. Dice, and, if some of the trainmen had gone in there and grabbed that fellow up, he might have struck him; that is exactly what he looked like he would do. I was actually afraid of him. He was a bigger man than I am, and his eyes looked as big as my fist. I think that if either of the men engaged in running that train had attempted to put him off that he would have fought us. I believe if I had attempted to take him off he would have knocked me down. I thought the smoothest way to get him off was to get an officer to get him off. After Dice came off with the officer, he wanted to get back on the train and go on to Holland, and I pre-

vented him from getting back on, because I knew I had an officer standing there, and I says: 'You cannot get on this train for Holland. You can get on here provided you show transportation or pay the train auditor to Bartlett, or any other place where this train is destined to stop.' Dice turned to the officer, and says: 'Why, I am arrested now. What is the charge?' But the officer did not arrest him, but said, 'I will arrest you if you don't quit making so much noise.' "

The peace officer testified, in substance, as follows:

"When, upon reaching the train, I asked Foster, the brakeman, where was that bad man, he said, 'He is right back here, and I want him off this train.' I walked up to this man, and I says, 'You will have to get off this train;' and he says, 'Well, I have paid for this ticket to Holland;' and I says, 'I cannot help that, they tell me to take you off of the train;' and I says, 'Pick up your grip and come on and get off.' He says, 'Are you an officer?' and I said, 'Yes, sir.' I don't know positively which one went out ahead, but there were two men between me and this plaintiff, Dice, here, and we stepped off the steps, and Dice says to me, 'Now you have got me arrested, what are you going to do with me?' I says to Foster, 'Do you want me to make a complaint against this man for anything?' And Foster says, 'No, I just wanted him off of the train;' and I says, 'You are not arrested.' Dice was standing right there by me on the platform at that time, and he says, 'Well, you have got me arrested, why don't you put me in jail?' I says: 'You are not arrested; you are at liberty to go anywhere you want to. I have nothing more to do with you.' Dice said something about getting back on the train, but the train was fixing to leave, so I went and caught a hack and went on to town. Dice did not start to get back on the train, but he said something about getting back on there, and one of the boys said something to him; but I did not understand what it was. I did not take hold of Mr. Dice and pull him out of his seat, and take hold of him by his arm, or put my hand on his back, or push him out of the train. I never touched that man from that time to this. I never put my hands on that man at all. I was a peace officer at that time, but I did not put my hands on this man, either in the car or going out of the car, or on the platform there."

Appellee testified, relating to the question under consideration, among other things, as follows:

"I do not know whether I would have resisted if the auditor and conductor had undertaken to put me off. My mind was not made up on that. I don't know what I would have done. I don't know whether I would have resisted them or not. I did refuse to get off at Temple, but my mind was not made up as to whether I would have fought the auditor and conductor if they had undertaken to put me off there. I don't know whether I would have given them the best I had in my shop or not. I don't know what I would have done. I don't know whether I would have resisted them or not. I would not have gone off willingly. The reason I would not get off at the request of the persons in charge of the train and then went off at the request of the peace officer was because I was placed under arrest. I do not know whether I would have gone off without being placed under arrest or not. I went off quietly for the peace officer. I did not get off at the request of the persons in charge of the train, although they requested me two or three times to get off the train."

"When I went off the train with the peace of-

ficer, we stopped about four or six feet from the steps, something like that, and the train was standing there all the time, and I asked what I was arrested for, and the train auditor said that I was arrested for refusing to get off the train; the train auditor was then standing on the steps. I attempted to get back on the train while the peace officer had me by the left arm, and he maintained his hold on my arm from the time I got down off the train. If he had turned me loose and the train auditor had not been in any way, I would have boarded the train again. I asked the peace officer to let me board the train and told him I had a ticket to ride that train, and the train auditor said, 'You are not going to get on here.' * * * If I had gotten on the train again and they had undertaken to put me off, I don't know what I would have done. I don't know whether I would have fought them or not. I cannot tell you whether it is my best impression that I would have fought them or not. I cannot tell you what I would have done. I don't know whether I would have resisted them or not. If the policeman had let me go and the auditor had not obstructed the way, I would certainly have boarded that train again. * * * I am exactly six feet tall."

To our minds the evidence did not raise the issue of the use of more force than was reasonably necessary to induce appellee to leave and remain off of the train at Temple. It is undoubtedly true, as the court instructed the jury, that appellant's employés, in the absence of a tender by appellee of fare from Holland to Bartlett, had the right to eject him from the train at Temple, using all force reasonably necessary for that purpose. Under the court's charge, however, even the lawful force that was permissible would authorize a finding that appellee was arrested, in which event the jury were specifically instructed to find for the plaintiff, thus entirely ignoring the issue of appellant's right to eject appellee in event the jury should fail to find with him on the issue of whether or not he had tendered the fare from Holland to Bartlett.

We conclude that the judgment should be reversed because of error in the court's charges, and that the cause should be remanded for a new trial.